*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. A. CHAPMAN, Minor.

UNPUBLISHED
October 10, 2019

No. 348476
Wayne Circuit Court
Family Division
LC No. 15-518909-NA

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Respondent, A. Chapman, appeals as of right an order terminating her parental rights to the minor child under MCL 712.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

Respondent gave birth to her child when she was 17 years old. In January 2015, when the infant was about three months old, he was burned by hot water when respondent allegedly accidentally turned the cold water off rather than the hot water during a bath. After the child was burned, respondent failed to seek prompt medical care for the child's burn injury. During a Child Protective Services (CPS) investigation that followed, it was also discovered that the child had sustained a fractured clavicle. An amended petition was filed seeking termination of respondent's parental rights. In May 2015, the trial court found grounds to exercise jurisdiction over the child but declined to terminate respondent's parental rights. Thereafter, the child was made a temporary ward of the court and respondent was provided with a treatment plan designed to improve her parenting skills. Over the course of the next three years, respondent participated in services and, at times, made progress toward reunification. Eventually, however, respondent's progress was deemed insufficient and petitioner filed a supplemental petition seeking termination of respondent's parental rights. In December 2018, after a lengthy termination hearing that spanned several months, the court terminated respondent's parental rights. This appeal followed.

Respondent first argues that the statutory grounds for termination of her parental rights were not established by clear and convincing evidence. We disagree.

To terminate parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence. *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K); *In re BZ*, 264 Mich App 286, 296; 690

NW2d 505 (2004). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. at 296-297.

At the time the termination hearing began, MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) permitted termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

---

[1] MCL 712A.19b(3)(g) was amended by 2018 PA 58, effective June 12, 2018. As amended, this paragraph now provides:

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

The supplemental permanent custody petition, filed on October 20, 2017, cited the preamendment version of the statute that was in effect at the time. The hearing on the permanent custody began on January 10, 2018, before the effective date of the amendment. It ended on November 28, 2018, after the effective date of the amendment. During closing arguments, the parties argued the preamendement version of MCL 712A.19b(3)(g). In its November 28, 2018 oral opinion, the court similarly applied the preamendment language. Respondent did not challenge the trial court's reliance on the preamendment version of the statute below and does not raise that issue on appeal. Indeed, in her brief on appeal, respondent cites the preamendment version of the statute. Because much of the termination hearing was held before June 12, 2018,

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

After reviewing the record, we conclude that the trial court did not err when it terminated respondent's parental rights under the foregoing grounds. Because the facts that support the statutory grounds necessarily overlap, they will be discussed concurrently to avoid repetition.

The trial court took jurisdiction of the child because of allegations of abuse and medical neglect. At the age of three months, the child was found to have suffered burns on his thigh and a fractured clavicle. While it would appear that the child's burns were caused by an unfortunate accident, respondent's failure to seek medical attention was evidence of neglect. Moreover, there was clear and convincing evidence that the broken clavicle was the product of non-accidental trauma. Birth trauma was ruled out as a cause of the fracture and the only explanation respondent could give was that she possibly pulled the child out of his car seat with too much force. The examining physician testified that it would have taken a significant amount of force to fracture the child's clavicle. Immediately after the adjudication, respondent was ordered to comply with services designed to address and improve her parenting skills. The treatment plan included participation in parenting classes, counseling, parenting time, and a psychological evaluation. During the termination proceedings, petitioner discovered respondent's substance abuse. Respondent admitted to using marijuana, the court accepted respondent's plea of admission, and then found that respondent's substance abuse constituted an additional basis to exercise jurisdiction over the child. The court then added weekly drug screens and substance abuse counseling to respondent's treatment plan.

The evidence supports the trial court's finding that the conditions that led to the adjudication, and other conditions, continued to exist at the time of the termination hearing and that the child would be at risk in respondent's care. Respondent was provided with a multitude of services designed to address her parenting skills and substance abuse issues. While respondent was in partial compliance with the requirements of her treatment plan, it is clear that she did not benefit from the services offered. At the time of termination, after more than three years of services, respondent was unable to demonstrate appropriate parenting skills and show that the child would be safe in her care.

and both parties presented their statutory-ground arguments under the prior version of the statute, we conclude that the trial court did not err by applying the preamendment version of the statute. Moreover, because we conclude that termination was proper under §§ 19b(3)(c)(*i*), (c)(*ii*), and (j), and petitioner need only establish one ground for termination, *In re Gonzales/Martinez*, 310 Mich App at 431, any error in relying on the preamendment version of § 19b(3)(g) as an additional basis for termination would be harmless. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

-3-

Throughout the proceedings, and while she was participating in services, respondent repeatedly exercised poor judgment that placed, or potentially placed, the child at risk. On more than one occasion during her unsupervised parenting time, she left the child with unapproved caregivers. On one of these occasions, respondent left the child and then was shot while in the company of a man who was conducting a drug deal. Respondent contends that this event had no bearing on her ability to parent the child, but the shooting event was highly probative of respondent's ability to keep the child safe. Respondent does not recognize that her decision to engage with a drug dealer placed both herself and potentially the child at risk. If respondent is unable to identify obvious risks of harm, it is clear that the child would not be safe in her care. Furthermore, respondent repeatedly lied about her conduct. Her lack of candor with the court and her caseworker was a relevant consideration for the court. That respondent chose to conceal her conduct does, in fact, suggest that on some level she was aware that her actions were questionable. Yet, respondent chose to engage in the questionable behavior, nonetheless.

There was also evidence that respondent was unable to recognize the child's needs and respond appropriately to them. An infant mental health (IMH) therapist worked with respondent and the child for about one year before the termination of parental rights. The IMH program was designed to address relationship issues. Despite a year of counseling, the therapist testified that respondent continued to exhibit concerning behavior that indicated she was not benefiting from the services. According to the therapist, respondent struggled with setting limits with the child and she was unable to connect with him emotionally and with empathy. The therapist was also concerned with respondent's substance abuse issues. Two glaring examples that respondent was unable to put the child's needs ahead of her own were revealed during the proceedings. On one occasion, respondent gave up the opportunity to spend Christmas Eve and Christmas day with the child because she had other plans. During the termination proceedings, respondent requested that a hearing date be scheduled around her planned vacation. Although respondent later claimed that she had canceled her vacation, the fact remains that the hearing was still delayed to accommodate respondent's planned vacation.

Respondent's drug use was also a compelling factor in this child protective proceeding. Respondent's history of drug use was referenced in her April 2016 psychological evaluation, but her continued use did not come to light until April 2018. At that time, petitioner had apparently discovered a video implicating respondent. In response, respondent entered a plea of admission, and the court found additional conditions that supported its jurisdiction over the child. Thereafter, drug screens and substance abuse therapy were added as components of the treatment plan. Despite services, respondent continued to test positive for controlled substances throughout the termination hearing. Indeed, between April 27, 2018 and November 27, 2018, while the termination hearing was in progress, 33 drug screens were requested of respondent. Respondent missed 14 screens. Of the 19 she participated in, 12 were positive for marijuana, two were positive for OxyContin, a drug for which she failed to produce a prescription, and one was positive for both substances. Later, respondent admitted that a relative provided her with the OxyContin. At the time of the termination hearing, respondent's drug abuse remained a barrier to reunification.

In sum, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights to the child pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the time the court terminated respondent's parental rights, the child had been in

care for well more than three years, nearly his entire life. During this time, respondent was offered a multitude of services designed to address the barriers to reunification. Although she was in partial compliance with the requirements of her treatment plan, it was clear that she did not benefit from the services provided. Not only must a respondent cooperate in services, she must benefit from those services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). The conditions that led to the adjudication, and the conditions that surfaced during the proceedings, continued to exist and there was no evidence that they would be rectified within a reasonable time. As a result, at the time of termination, respondent could not demonstrate that she was in a position to safely and properly parent her child. Moreover, the unresolved issues would create a risk of harm to the child if he were placed in respondent's care. Accordingly, the trial court did not clearly err when it found that the statutory grounds for termination had been established by clear and convincing evidence.

Next, respondent asserts that the trial court erred when it found that termination of her parental rights was in the child's best interests. Again, we disagree.

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

A trial court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App at 131. After considering the totality of the record, the trial court concluded that a preponderance of the evidence demonstrated that it was in the child's best interests to terminate respondent's parental rights. After reviewing the record, we are not left with a definite and firm conviction that a mistake has been made.

At the time of termination, the child had been in care almost four years. During this time, respondent was offered services, yet she was never able to sustain sufficient progress to demonstrate an improvement in her parenting skills. Indeed, respondent's poor judgment and dishonesty confirmed that she had not benefited from services and that the child would be at risk of harm in her care.

The child was in the care of a maternal cousin at the time of termination and she had been the child's caregiver for all but a few months of his life. "[A] child's placement with relatives weighs against termination" and the fact that a child is living with a relative is an "explicit factor" that must be considered when determining whether termination is in the best interests of the child. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Even though placement with a relative weighs against termination, and the fact that a child is living with relatives must

be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43.

In this case, the trial court acknowledged the relative placement, but still found that termination of respondent's parental rights was in the child's best interests. The court considered the fact that the maternal cousin was unwilling to adopt or provide a guardianship for the child, but only offered her assistance in finding another relative who might be willing to plan permanently for the child. No other relative was identified. Clearly, the record supports that permanent placement with relatives was not an option for this child. Respondent argues that by terminating her parental rights, this left the child in the predicament of losing both his mother and the only other caregiver he had ever known. However, respondent ignores the fact that her conduct precipitated these events, that it was not reasonable to return the child to her care, and that the relative caregiver was not a viable permanency plan. Consequently, termination of respondent's parental rights was the best avenue by which this very young child would be afforded the greatest opportunity to achieve permanency and long-term stability. Considering this, the trial court did not clearly err when it determined that termination of respondent's parental rights was in the child's best interests despite the fact that he was in relative placement with a maternal cousin.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola